# EXHIBIT A

Filed in District Court
State of Minnesota

MAY 0 7 2025

# State of Minnesota

| County |
|---|
| ANOKA |

# District Court

| Judicial District: | Tenth |
|---|---|
| Court File Number: | TBD 02-CV-25-3480 |
| Case Type: Civil Rights/Personal Injury | Discrimination |

Michael Fiorito
_____
Plaintiff

vs

**Civil Complaint**

~~D~~ DRVM LLC
_____
Defendant

The Plaintiff makes the following complaints against the Defendant:

If you have more than 1 complaint against Defendant, list each complaint separately, including any supporting facts.

1. _____ See Attached Pages
   _____

2. _____

3. _____

4. _____

5. For any other relief the court feels is fair and equitable.

Based on the complaints above, Plaintiff demands the following relief:

1. _____ See Attached Pages
   _____

2. _____

## Facts and Causes of Action:

1. Plaintiff's Residence: Michael Fiorito is a resident of Minnesota.

2.Defendant's Domicile: DRVM LLC ("Defendant") is a Nevada-domiciled company. There is no record with the Minnesota Secretary of State indicating that the Defendant is authorized to conduct business in Minnesota. DRVM LLC operates primarily by selling supplements within Costco stores nationwide, employing sales representatives to promote its products to Costco customers.

3. Employment Details: On or about February 12, 2024, Plaintiff was hired by Joe Psaradelis, an employee of the Defendant, who also operates under the name Direct Demo.

4. Disclosure of Disability: During a phone interview on or about February 25, 2024, Plaintiff disclosed to Mr. Psaradelis that he suffers from severe arthritis and traumatic brain injury (TBI), which hinder his ability to stand for extended periods. Plaintiff specifically requested accommodations, including a chair or stool, to manage his condition. Psaradelis assured Plaintiff that they would "deal with it" as necessary.

1

5. First Day of Work: On or about March 3, 2024, Plaintiff began working at the **Coon Rapids** Costco location.

6. Inability to Comply with Standing Requirements: Upon starting work, Plaintiff encountered difficulties due to the requirement to stand for prolonged periods. He experienced pain and swelling in his right ankle and left knee, necessitating breaks to alleviate discomfort.

7. **Need for Accommodations: Despite his attempts to endure the conditions, Plaintiff was compelled to sit due to his medical issues.

8. Denial of Accommodations: Shortly thereafter, Plaintiff communicated his need for a chair to Mr. Psaradelis, who responded, "You can't be sitting on the Costco floor; just tough it out."

9. Further Restrictions**: A few days later while working at the Eden Prairie Cotsco , another vendor informed Plaintiff that Mr. Psaradelis had instructed her to tell Plaintiff he could only sit during designated breaks and at no other time and he would be reprimanded if they "caught" him sitting

10. Continued Denial of Needs: From approximately March 3, 2024, to April 28, 2024, Mr. Psaradelis, a Costco manager, and other employees repeatedly informed Plaintiff that he was not permitted to sit during his shifts, despite Plaintiff's ongoing requests for a chair due to his

disabilities and despite Plaintiff showing them that his left knee and right ankle were swollen and red

11. Persistent Requests for Accommodations:

On or about March 10, 2024, Plaintiff asked Psaradelis if he could use his own chair at work. Psaradelis firmly declined, stating, "Absolutely not; Costco will have me terminate you, and you will cause problems between Costco and Direct Demo. Stop causing trouble." On or about March 28, 2024, Plaintiff similarly inquired with the Costco manager, who responded, "No; if you're on the floor, you have to stand. Sitting makes us all look lazy."

12. Sales Performance: Despite his physical limitations, Plaintiff consistently achieved significant sales of the Defendant's products during this period.

13. Disciplinary Threats: On or about March 19, 2024, the Costco manager informed Psaradelis that Plaintiff had been sitting too much and not adhering to his station. The following day, Psaradelis warned Plaintiff that he had received complaints regarding Plaintiff's sitting and threatened termination if it continued.

14. **Health Concerns: During a subsequent call on or about March 21, 2024, Plaintiff reiterated his health concerns, explaining to Psaradelis the swelling in his knee and ankle, and again requested accommodations. Psaradelis warned, "No, keep asking, and you will lose your job."

15. **Injury and Medical Advice: On or about April 13, 2024, Plaintiff was observed limping and displaying obvious swelling in his knee. A Costco employee advised him to sit down to manage his condition. After sitting for two hours, Plaintiff informed Psaradelis of his need to go home due to swelling, to which Psaradelis responded, "You should start looking for a new job."

16. **Manipulation of Sales Data: Around March 15, 2024, Psaradelis began manipulating Plaintiff's sales figures to create the impression that Plaintiff was underperforming.

17. **Management Control**: Psaradelis exerted strict control over the work environment, dictating sales scripts, product placements, hours of work, and break schedules, with Plaintiff utilizing the Defendant's equipment.

18. Incident of Injury: On or about April 14, 2024, Plaintiff fell in the Costco restroom due to dizziness and lost footing on a wet floor, landing on his injured left knee. When he reported this incident to Psaradelis, he was told, "Keep your mouth shut about it; Costco is on the verge of kicking us out."

19. Further Injury: The fall exacerbated Plaintiff's existing knee injury, resulting in increased swelling and pain

20. HR Response: On or about March 24, 2024, Plaintiff spoke with a female HR representative for the Defendant, requesting assistance in obtaining a chair as an accommodation. She denied his request, stating, "We don't like to do that; Costco wants you standing." When asked for her name, she refused to provide it; this individual is identified as Psaradelis's girlfriend.

21. Termination Notice: On or about April 27, 2024, Plaintiff informed Psaradelis of his need for approximately eight days off for urgent hip surgery scheduled for May 1, 2024. Psaradelis responded by terminating Plaintiff's employment.

I. INTRODUCTION

1. This is a class action lawsuit brought by Plaintiff Michael Fiorito ("Plaintiff"), on behalf of himself and all other similarly situated individuals (collectively, "Class Members") who are or were employees of DRVM LLC ("Defendant") and who were denied reasonable accommodations for their disabilities and subsequently terminated under pretextual circumstances between January 1, 2017, and October 1, 2024.

II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it involves federal questions arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.

3. Minnesota Human Rights Act (MHRA), codified in Chapter 363A of the Minnesota Statutes.

4 A. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred within this District, and Defendant conducts business in this District.

III. PARTIES

4. Plaintiff: Michael Fiorito is a resident of Minnesota and was employed by Defendant from February 2024 until his termination in late April 2024.

5.Defendant: DRVM LLC is a Nevada-based company engaged in the sale of supplements, operating in various locations, including Minnesota. Defendant has not registered to conduct business in Minnesota. The only known address Plaintiff could locate on this company was: Registered Agent Fabian & Clendenin APC   Basil Management & Trust 411 E. Bonneville Ave Suite 400 Las Vegas, NV

A1. EXHAUSTION OF ADMINISTRATIVE REMEDIES: Plaintiff timely filed his discrimination complaint with the Minnesota Dept of Human Rights and after they issued the right to sue letter this complaint followed.

IV. CLASS ALLEGATIONS

6. Plaintiff brings this action on behalf of himself and a proposed class defined as follows:

All employees of DRVM LLC who resided in Minnesota and worked for the Defendant between January 1, 2017, and October 1, 2024, and who were denied reasonable accommodations for their disabilities and subsequently terminated for pretextual reasons

7. Numerosity: The members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of dozens, if not hundreds, of individuals.

8. Commonality: There are questions of law and fact common to the Class, including but not limited to:

   a. Whether Defendant had a policy or practice of denying reasonable accommodations to employees with disabilities.

   b. Whether Defendant terminated Class Members for reasons related to their disabilities rather than legitimate business concerns.

   c. Whether Defendant's actions constitute violations of the ADA, the Federal Rehabilitation Act, and the Minnesota Human Rights Act and other Minnesota State Laws

9. Typicality: Plaintiff's claims are typical of the claims of the Class Members. Like other Class Members, Plaintiff was denied reasonable accommodations for his disability and terminated under pretextual circumstances.

10. Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no conflicts of interest with Class Members.

11. Predominance and Superiority: Questions of law or fact common to the Class predominate over any questions affecting only individual members. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

V. FACTUAL ALLEGATIONS

12. The factual allegations outlined in the preceding sections are incorporated herein by reference.

13. Class Members, including Plaintiff, disclosed their disabilities to Defendant and requested reasonable accommodations in accordance with the ADA and other applicable laws.

14. Defendant systematically denied such requests and retaliated against Class Members by terminating their employment, often citing pretextual reasons while knowing the real motivation was related to their disabilities.

15. As a result of Defendant's actions, Class Members have suffered damages, including lost wages, emotional distress, and other harms.

VI. CLAIMS FOR RELIEF

Count I: Violation of the Americans with Disabilities Act (ADA)

16. Plaintiff and Class Members incorporate by reference all preceding paragraphs as if fully set forth herein.

17. Defendant's conduct constitutes unlawful discrimination against individuals with disabilities in violation of the ADA, including but not limited to:

  a. Failing to provide reasonable accommodations to qualified employees with disabilities.

  b. Terminating employees based on their disabilities, rather than legitimate business reasons.

Count II: Violation of the Federal Rehabilitation Act

18. Plaintiff and Class Members incorporate by reference all preceding paragraphs as if fully set forth herein. It is unknown whether or not the Defendant receives any federal funds, Plaintiff avers that Covid 19 funds received by any company falls within the Federal Rehabilitation Act, upon information and belief this Defendant did receive federal funds subjecting it to this statute.

19. Defendant's actions violate Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, which prohibits discrimination against individuals with disabilities in programs or activities receiving federal financial assistance.

20. Plaintiff and Class Members were denied reasonable accommodations and suffered discrimination, injuries and damages in violation of this statute.

Count III: Violation of the Minnesota Human Rights Act

21. Plaintiff and Class Members incorporate by reference all preceding paragraphs as if fully set forth herein.

22. Defendant's actions constitute unlawful discrimination under the Minnesota Human Rights Act, Minn. Stat. § 363A.01 et seq., including but not limited to:

   a. Failing to provide reasonable accommodations to employees with disabilities.

   b. Terminating employees on the basis of their disabilities.

23. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and Class Members have suffered and continue to suffer damages.

10

Count IV: Violation of Minnesota Statutes on Employment Discrimination

24. Plaintiff and Class Members incorporate by reference all preceding paragraphs as if fully set forth herein.

25. Defendant's conduct also violates Minn. Stat. § 181.931, which prohibits discrimination in employment based on disability.

26. Defendant's refusal to accommodate and subsequent termination of Class Members based on their disabilities constitutes a violation of this statute.

CLASS ACTION COMPLAINT

I. INTRODUCTION

1. This is a class action lawsuit brought by Plaintiff Michael Fiorito ("Plaintiff"), on behalf of himself and all other similarly situated individuals (collectively, "Class Members") who are or were employees of DRVM LLC ("Defendant") and who were denied reasonable accommodations for their disabilities and subsequently terminated under pretextual circumstances between January 1, 2017, and October 1, 2024.

III. PARTIES

4. Plaintiff: Michael Fiorito is a resident of Minnesota and was employed by Defendant from March 2024 until his termination in April 2024.

5. Defendant: DRVM LLC is a Nevada-based company engaged in the sale of supplements, operating in various locations, including Minnesota. Defendant has not registered to conduct business in Minnesota and it is unknown if Defendant is authorized to conduct business in Minnesota. To Plaintiffs knowledge the only known address for this company is: <u>Basil Management 411 E. Bonneville Ave  Suite #400    Las Vegas, NV  89101   Registered Agent Fabian & Clendenin APC.</u>

IV. CLASS ALLEGATIONS

6. Plaintiff brings this action on behalf of himself and a proposed class defined as follows:

  All employees of DRVM LLC who resided in Minnesota and worked for the Defendant between January 1, 2017, and October 1, 2024, and who were denied reasonable accommodations for their disabilities and subsequently terminated for pretextual reasons.

7. Numerosity: The members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of dozens, if not hundreds, of individuals.

8. Commonality: There are questions of law and fact common to the Class, including but not limited to:

   a. Whether Defendant had a policy or practice of denying reasonable accommodations to employees with disabilities.

   b. Whether Defendant terminated Class Members for reasons related to their disabilities rather than legitimate business concerns.

   c. Whether Defendant's actions constitute violations of the ADA, the Federal Rehabilitation Act, and the Minnesota Human Rights Act.

9. Typicality: Plaintiff's claims are typical of the claims of the Class Members. Like other Class Members, Plaintiff was denied reasonable accommodations for his disability and terminated under pretextual circumstances.

10. Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no conflicts of interest with Class Members and has retained competent counsel experienced in class action litigation.

11. Predominance and Superiority: Questions of law or fact common to the Class predominate over any questions affecting only individual members. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

V. FACTUAL ALLEGATIONS:

12. The factual allegations outlined in the preceding sections are incorporated herein by reference.

13. Class Members, including Plaintiff, disclosed their disabilities to Defendant and requested reasonable accommodations in accordance with the ADA and other applicable laws.

14. Defendant systematically denied such requests and retaliated against Class Members by terminating their employment, often citing pretextual reasons while knowing the real motivation was related to their disabilities.

15. As a result of Defendant's actions, Class Members have suffered damages, including lost wages, emotional distress, and other harms.

VI. CLAIMS FOR RELIEF

Count I: Violation of the Americans with Disabilities Act (ADA)

16. Plaintiff and Class Members incorporate by reference all preceding paragraphs as if fully set forth herein.

17. Defendant's conduct constitutes unlawful discrimination against individuals with disabilities in violation of the ADA, including but not limited to:

   a. Failing to provide reasonable accommodations to qualified employees with disabilities.

   b. Terminating employees based on their disabilities, rather than legitimate business reasons.

Count II: Violation of the Minnesota Human Rights Act

21. Plaintiff and Class Members incorporate by reference all preceding paragraphs as if fully set forth herein.

22. Defendant's actions constitute unlawful discrimination under the Minnesota Human Rights Act, Minn. Stat. § 363A.01 et seq., including but not limited to:

   a. Failing to provide reasonable accommodations to employees with disabilities.

   b. Terminating employees on the basis of their disabilities.

23. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and Class Members have suffered and continue to suffer damages.

Count IV: Violation of Minnesota Statutes on Employment Discrimination

24. Plaintiff and Class Members incorporate by reference all preceding paragraphs as if fully set forth herein.

25. Defendant's conduct also violates Minn. Stat. § 181.931, which prohibits discrimination in employment based on disability.

26. Defendant's refusal to accommodate and subsequent termination of Class Members based on their disabilities constitutes a violation of this statute.

VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that this Court:

1. **Certify this case as a class action and appoint Plaintiff as the representative of the Class; In the event this Honorable Court determines that Plaintiff, for whatever reasons, cannot adequately represent the class Plaintiff respectfully requests the Court appoint counsel for the limited purpose of representing the class, Plaintiff has submitted a motion for appointment of counsel with this complaint.**

2. Award injunctive relief in the form of a temporary restraining order against Defendant and its employees to immediately cease their unlawful discriminatory policies and practices, and to institute company-wide policies for providing reasonable accommodations;

3. Award punitive damages of $1,000,000 for the Class;

4. Award punitive damages of $200,000 to Plaintiff Fiorito;

5. Award compensatory damages in an amount to be determined by a jury;

6. Award presumed damages in an amount for all plaintiffs to be determined by a jury;

7. Grant class certification;

8. Award damages for all known and unknown Class Members;

9. Grant declaratory relief;

10. Issue an order directing Defendant to self-report its violations to the U.S. Department of Justice's Civil Rights Division;

11. Award attorneys' fees;

12. Award all costs associated with this action;

13. Grant any other relief this Honorable Court may find fair and just.

AFFIDAVIT: I declare under penalty of perjury pursuant to 28 USC 1746 that the information contained herein is true and accurate to the best of my recollection and for information I do not have first hand knowledge of I believe it to be true upon information and belief

Respectfully Submitted,


/s/_____

Michael Fiorito, *pro se*

3. _____
   _____
   _____
4. _____
   _____
   _____

*Add another page if more space is needed. Do not use the back of the paper.*

## ACKNOWLEDGMENT

By presenting this form to the court, I certify that to the best of my knowledge, information, and belief, the following statements are true. I understand that if a statement is not true, the court can order a penalty against me (such as to pay money to the other party, pay court costs, and/or other penalties).

1. The information I included in this form is based on facts and supported by existing law.

2. I am not presenting this form for any improper purpose. I am not using this form to:
   a. Harass anyone;
   b. Cause unnecessary delay in the case; or
   c. Needlessly increase the cost of litigation.

3. No judicial officer has said I am a frivolous litigant.

4. There is no court order saying I cannot serve or file this form.

5. This form does not contain any "restricted identifiers" or confidential information as defined in Rule 11 of the General Rules of Practice (https://www.revisor.mn.gov/court_rules/gp/id/11/) or the Rules of Public Access to Records of the Judicial Branch (https://www.revisor.mn.gov/court_rules/rule/ra-toh/).

6. If I need to file "restricted identifiers," confidential information, or a confidential document, I will use Form 11.1 and/or Form 11.2, as required by Rule 11.

March 17, 2024

_____
Date

Signature

Name: _____Michael Fiorito_____

Address:_____19000 Stratford Road # 105_____

City, State, Zip: _____Minnetonka MN 55345_____

Telephone: _____763-357-1659_____

_____

E-mail: _____



ATTACHEMENT A

 **DEPARTMENT OF HUMAN RIGHTS**

December 2, 2024

Case Number: 76068
Michael Fiorito
v.
DRVM LLC dba Direct Demo

Michael Fiorito
9911 Pillsbury Ave S
Bloomington MN 55420
assetbiz5@gmail.com

You are hereby given notice that Minnesota Department of Human Rights (MDHR) has terminated all proceedings relating to the above-referenced charge. MDHR has received notification that charging party has exercised the right to seek redress through a private civil action and in accordance with Minnesota Statute § 363A.33, has withdrawn the above-referenced charge from MDHR.

Accordingly, the case has been officially closed and MDHR will take no further action on this matter.

This action also concludes the processing of the dual-filed charge at the Equal Employment Opportunity Commission (EEOC), pursuant to the Work-Sharing Agreement between our agencies.

If you have any questions, contact MDHR at caseprocessing.mdhr@state.mn.us or 651-539-1100.

Sincerely,

Rebecca Lucero, Commissioner
Minnesota Department of Human Rights

cc: